# CHARLESTON.

### HALL v. STAUNTON.

Submitted April 21, 1904—Decided April 22, 1904.

1. MANDAMUS.

   The extraordinary writ of *mandamus* will never be issued in any case where it is unnecessary, or where, if used, it would prove unavailing. fruitless and nugatory. The court will not compel the doing of a vain thing. A mere abstract right, unattended by any substantial benefit to the party asking *mandamus*, will not be enforced by the writ. (p. 686).

2. INSPECTION OF PAPERS IN CLERK'S OFFICE.

Petition of Addison Hall for writ of *mandamus* to E. W. Staunton, Clerk of the County Court.

*Refused.*

LINN, BYRNE & CATO, and P. G. WALKER, for petitioner.

MOLLOHAN, McCLINTIC & MATHEWS, for respondent.

BRANNON, JUDGE:

Addison Hall presented to this Court a petition praying for a *mandamus* against E. W. Staunton, clerk of the county court of Kanawha county, to compel Staunton to allow Hall to inspect the poll books, tally sheets and certificates of precinct returns of a special election held in that county on May 9, 1903, upon the question of issuing bonds to fund the county's indebtedness. Staunton resists the award of a *mandamus*. The petition says Hall demanded such inspection of Staunton, but was refused it.

The petition states that the clerks made a statement from the returns that the bond proposition had carried, but that two members of the county court secretly met and caused to be entered on the election record an order declaring that the proposition to issue bonds had not carried, but that said order was false, and that the returns as originally made showed that the proposition had carried, and that the returns had been fraudulently altered. The petition further states that Hall obtained from the circuit court a *mandamus nisi* against the members of the county court requiring them to convene as a board of canvassers and canvass the returns of said election, on the claim that no canvass had been legally made, and that the circuit court quashed the *mandamus nisi* and dismissed Hall's petition, with costs, and that Hall had the record copied with a view to applying to the Supreme Court for a writ of error to reverse the judgment of the circuit court; and that he again asked Staunton for an inspection of the said election documents stating that he desired it in connection with said proceeding, but was refused such inspection. The petitioner says that he desires to see the documents particularly for the reason that he had been informed that the result of the election, as it appeared on the election papers, had been changed; and that he believed that the true returns would show that the bond proposition had been carried. The petition states that "the question of whether or not said writ of error shall be applied for and prosecuted has been under advisement, and petitioner has not decided whether to apply for said writ or to abandon it," and

that the facts to be ascertained by such inspection would weigh largely in determinig that question. It further states that another object of such inspection was to see whether such forgeries and alterations had been made.

The ruling question is: Does Hall present such a case as calls for a *mandamus* to compel the clerk to allow the inspection of the election papers? And that question may be narrowed to this question, Will the *mandamus* avail any useful legal purpose for Hall? In *Payne* v. *Staunton*, 46 S. E. page 927, 55 W. Va. 202, we held that one asking a *mandamus* must show a right vested in him to be vindicated or aided by the writ.

That is not the question in this case. Conceded that one having, or even contemplating a suit, has a right to inspect records in connection with or in furtherance of it, or even merely to determine upon the advisability of such suit; still he must show that an inspection is necessary; that it will be useful and avail him for that purpose. More plainly yet, the writ will not be granted where it appears that the thing he seeks will answer no legal purpose. In *State* v. *County Court*, 47 W. Va. 672, we said that *mandamus* will only go to secure or protect a clear legal right," and that it will not go "if it would prove fruitless." Authorities are there given for those rules of law. "The court will refuse to grant a *mandamus* when it is manifest it will be barren and fruitless, or useless, or cannot have a beneficial effect." *Crisman* v. *Peck*, 90 Ill. 150.

"*Mandamus* will not be granted where it would be fruitless to afford the relief sought." *Laman* v. *Wilkins*, 28 Ark. 34. "The extraordinary writ of *mandamus* will never be issued in any case where it is unnecessary, or where, if issued, it would prove unavailing, fruitless and nugatory. The court will not compel the doing of a vain thing. * * * * A mere abstract right, unattended by any substantial benefit to the relator, will not be enforced by *mandamus*." 19 Am. & Eng. Ency. L. (2d Ed.) 756.

Test the case by these plain law principles. Hall says that he wants this inspection to make up his mind whether he will or will not ask a writ of error from the judgment of the circuit court refusing a *mandamus* to compel the county canvassers to canvass the returns of the bond election. This is not a satisfactory statement of actual purpose in asking an inspection.

It does not indicate upon what condition or in what event dependent upon the revelation of such inspection, he will ask a writ of error. He does not say whether, in any event, he will ask it. He does not say that in certain event he will ask a writ of error. But waive this objection, though forcible, because the petition does not tell of an actual use, in some event, of such inspection.

Apart from this objection to the statement for the purpose of inspection, we say that it does not appear that such inspection will serve any legal purpose; but on the contrary, it is apparent that it will not do so but will be fruitless and useless. And why? Because those election documents, whatever they might reveal, whether wrongfully altered or not, could not be considered upon either a petition for a writ of error, or upon the hearing of such writ, if granted; and this for the reason that such writ of error must be heard only on the record as it was in the circuit court when decided, and no papers *dehors* that record can be looked at. This is unquestionable. Counsel for Hall frankly admits this to be so. This decides the case; for no purpose for which inspection is wanted is specified; and when we know that the papers cannot be used upon a writ of error, we descry no other use. Hall says he wants to see the papers to conclude whether or not to ask a writ of error; but as they cannot be used upon a writ of error, we fail to see how they could enter into the process of determining for or against applying for a writ of eror. No other purpose of inspection being given us, we might stop here and not enter the field of speculation as to some other purpose for which the papers might be used. The petition does not show that any legal proceeding involving the result of said election is going on in which such election papers are to be used; nor does it say that Hall contemplates any procedure in which they could be used. The only legal proceeding mentioned in the petition as one in connection with which the inspection is asked is that *mandamus* decided by the circuit court; but that is closed by final judgment. No disclosure made by an inspection of these election papers could be used in amending that case. Let us imagine that Hall should sue out a writ of error and this Court should reverse the circuit court's decision. The record could not be amended so as to introduce mater shown by those election

papers; but this Court would upon reversal award a *mandamus·* to compel the canvassers to canvass the election returns, and upon that canvass inspection of the election documents would be had, and all they revealed considered or presented for con-- sideration, and any wrong done Hall would be righted upon *certiorari* or *mandamus,* and thus would be afforded a remedy· for any grievance. This is an additional reason against our· awarding a *mandamus,* because it lies not where other rem-- edy is at hand. And this goes further to show that an inspec- tion cannot help Hall to get what he would seek by writ of error, and what he sought in the circuit court, namely, a canvass of the returns. How can those documents help to get a canvass· by the only suit he mentions, that is, by the writ of error, Though there be the abstract·right of inspection, *mandamus·* will not issue when it cannot avail anything.

It is suggested that the matter of costs in the *mandamus* suit· in the circuit court enters into this matter as presenting a· pecuniary interest in Hall. We do not see that it is material. The principles above stated apply to costs as to other aspects· of the case. Costs depend on the record as completed in the· circuit court, and upon the decision touching them the election papers could not be read. We do not rest our decision upon the question whether Hall has such interest as enables him to· maintain a writ of *mandamus,* but we hold that the inspection he seeks could answer no purpose in Hall's concluding whether· to ask for a writ of error, because he must know, in considering whether to do so, that the docuemnts can play no part in seeking· a writ of error or in its consideration. The inspection would be futile for the purpose, the one only purpose in contemplation..

The petition charged alteration of the return. How can that· operate in this case, If altered, that could not be considered' on writ of error. We can ascribe this purpose only to a design· to discover malefaction for idle curiosity, because it is not in-- dicated that in this there was even a design to render the clerk liable civilly or criminally. There must be a purpose, a sub-- stantial right recognized by law to be vindicated to warrant a· *mandamus.* It is not lightly called into exercise. Merrill on· Mandamus, sec. 49. It will not lie for mere discovery of crime,. for mere curiosity or fancy; nor do we think it will lie to reveal' crime merely to bring upon another infamy and disgrace.

*People* v. *Masonic*, 98 Ill. 635. In *Payne* v. *Staunton,* cited, we held that it would not lie for a private individual to ferret out crime. The writ is a civil writ, not a criminal process, nor an auxiliary criminal process. *State* v. *County Court,* 47 W. Va. 672. The prosecution of offenses is committed by law to certain public officers and agents, and individuals cannot interfere, except by suing out a warrant or going before a grand jury. As an individual member of the State, such are his processes to vindicate the broken criminal law, not *mandamus.* Viewed as a person acting only on his own right, he cannot act because he has no individual right; and viewed as a member of society representing the public, the law appoints other processes for him than *mandamus.* So we do not see that the charges of forgery made in the petition can call for *mandamus.* Therefore, we refuse the peremptory *mandamus,* and discharge the rule.

*Refused.*